UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.

ROY A. SWIFT

CASE NO. 6:26-cr- 69 - P GB-NWH
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 287

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

1.    Beginning on an unknown date, but from at least on or about

July 4, 2020, and continuing through on or about September 25, 2021, in the

Middle District of Florida and elsewhere, the defendant,

ROY A. SWIFT,

did knowingly and willfully combine, conspire, confederate, and agree with

others, known and unknown to the grand jury, to devise and intend to devise a

scheme and artifice to defraud, and to obtain money and property, by means

of false and fraudulent pretenses, representations, and promises, and in

furtherance thereof transmitted, and caused to be transmitted, interstate wire

communications, in violation of 18 U.S.C. § 1343.

1

## Background

### A.    The CARES Act

2.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

3.      In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency.

Paycheck Protection Program

4.      Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

5.      Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage

interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

6.        Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary, and, with limited exceptions, businesses with more than 500 employees did not qualify to obtain PPP loans.

7.        To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the business was required to certify information regarding business operations. Those certifications included that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii)

current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

8.    Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including any documents submitted to verify the applicant's payroll expenses. Such supporting documents could include payroll processor records, bank records, wage records, payroll tax filings with the Internal Revenue Service, or other records sufficient to demonstrate the qualifying payroll amount.

9.    Finally, the applicant was required to certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

4

10.     PPP loan applications would then be processed by participating lenders. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

Economic Injury Disaster Loan Program

11.     Another source of relief from the March 2020 CARES Act was the SBA Economic Injury Disaster Loan Program (EIDL), which provided up to $2 million of financial assistance (actual loan amounts are based on amount of economic injury) to small businesses or private, non-profit organizations that suffered substantial economic injury as a result of the COVID-19 pandemic.  The EIDL program provided emergency working capital to help meet necessary financial obligations the business or private, non-profit organization could have met had the disaster not occurred. It provided relief from economic injury caused directly by the disaster and permitted borrowers to maintain a reasonable working capital position during the period affected by the disaster. EIDL was not intended to replace lost revenues or lost profits.

12.    Through the SBA online portal, EIDL applicants could submit personal and business information in support of each EIDL application. Borrowers did not have to submit any supporting or substantiating documentation with their application. The application process involved filling out data fields relating to the size of the affected business entity, the ownership of the business, the number of employees working for the business, and gross business revenues realized in the 12 months prior to COVID-19s impact on the national economy. The business must have existed in an operational condition on or before February 1, 2020.

13.    EIDL applications required a certification that "any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to fines and imprisonment, or both, under 15 U.S.C. § 645, 18 U.S.C. § 1001, 18 U.S.C. § 1014, 18 U.S.C. § 1040, 18 U.S.C. § 3571, and any other applicable laws."

14.    The EIDL application information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the business was eligible to receive in the form of a loan. However, in conjunction with the submission of an EIDL application, by having simply clicked on and checked a box within the on-line application, an applicant could request and then receive up to $10,000.000, an EIDL Advance, which

was based upon the number of employees claimed. The EIDL Advance did not have to be repaid.

15.         The SBA Office of Disaster Assistance ("ODA"), headquartered in Washington, D.C., was responsible for the EIDL program. The ODA has authority over all loans created and disbursed under the EIDL program. EIDL principal proceeds and available Cash Advance Grants (up to $10,000) were solely funded by the SBA and disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

16.         Pursuant to the provisions governing the EIDL program, loan proceeds were required to be used on certain permissible business expenses. The EIDL funds could be used by the afflicted business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid absent the impact of COVID-19.

17.         As referenced above, applicants were not required to provide documents to the SBA. The SBA relied 100% on the truthfulness of an applicant's submission.

Financial Institutions Involved

18.         Benworth Capital ("Lender 1"), is a financial institution headquartered in Florida, that participated in the SBA's PPP as a lender and,

as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

19.        Lendistry Small Business Lending ("Lender 2"), is a financial institution headquartered in California, that participated in SBA's PPP and EIDL as a lender, and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

20.        Harvest Small Business Finance, LLC ("Lender 3"), is a financial institution headquartered in California, that participated in the SBA's PPP and EIDL as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

### C.    Manner and Means of the Conspiracy

21.        The manner and means by which the defendant, ROY SWIFT, and his conspirators carried out the conspiracy included, among others, the following:

Fraudulent CARES Act Loans in the Name of "Adreana King"

**July 2020 EIDL Application**

a.        It was part of the conspiracy that on or about July 4, 2020, members of the conspiracy would and did submit and cause the submission of a false a EIDL application to the SBA on behalf of the fraudulent business entity "Adreana King."

c.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Adreana King" involved a "self-employed individual" with an annual gross income of $30,000 in 2019.

d.      It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA to approve the EIDL application and to issue approximately $15,000 in EIDL funds.

**March 2021 PPP Application**

e.      It was further part of the conspiracy that on or about March 26, 2021, members of the conspiracy would and did submit and cause the submission of a false PPP application to Lender 3, on behalf of the fraudulent business entity "Adreana King."

f.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the PPP funds acquired from the requested loan would be used to cover payroll costs (including proprietor expenses, equal to business expenses plus owner compensation).

g.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business

9

entity "Adreana King" involved a "self-employed individual" with an annual gross income of $106,600 in 2020.

h.      It was further part of the conspiracy that members of the conspiracy would and did submit and cause to be submitted false and fraudulent supporting documentation to Lender 3, including a false IRS Schedule C.

i.      It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA and Lender 3 to approve the PPP application and Lender 3 to issue approximately $20,833 in PPP funds to members of the conspiracy.

**April 2021 PPP Application**

j.      It was further part of the conspiracy that on or about April 15, 2021, members of the conspiracy would and did submit and cause the submission of a false PPP loan application to Lender 1, on behalf of the fraudulent business entity "Andrea Frisby."

k.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the PPP funds acquired from the requested loan would be used to cover payroll costs (including proprietor expenses, equal to business expenses plus owner

compensation).

l.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Andrea Frisby" was a sole proprietorship with an annual gross income of $106,600 in 2020.

m.      It was further part of the conspiracy that the members of the conspiracy would and did submit and cause to be submitted a false and fraudulent IRS Schedule C to Lender 1 as supporting documentation.

n.      It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA to approve the PPP application and the SBA to issue approximately $20,833 in PPP funds to Lender 1, which Lender 1 then disbursed the funds.

**May 2021 PPP Application**

o.      It was further part of the conspiracy that on or about May 20, 2021, members of the conspiracy would and did submit and cause the submission of a false PPP loan application to Lender 2, on behalf of the fraudulent business entity "Andrea Frisby."

p.      It was further part of the conspiracy that the members of the conspiracy would and did falsely and fraudulently certify that the PPP funds

acquired from the requested loan would be used to cover payroll costs (including proprietor expenses, equal to business expenses plus owner compensation).

q.      It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Andrea Frisby" was a sole proprietorship with an annual gross income of $106,600 in 2020.

r.      It was further part of the conspiracy that members of the conspiracy would and did submit and cause to be submitted a false and fraudulent IRS Schedule C to Lender 2 as supporting documentation.

s.      It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA and Lender 2 to approve the PPP application and Lender 2 to issue approximately $20,833 in PPP funds to members of the conspiracy.

**July 2021 EIDL Application**

t.      It was further part of the conspiracy that on July 16, 2021, members of the conspiracy completed an additional Supplemental Targeted Advance EIDL application associated with the information submitted on the original EIDL application that was submitted on July 4, 2020, for

"Adreana King."

u.    It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA to approve the EIDL application and to issue approximately $14,000 in EIDL funds.

Fraudulent CARES Act Loan in the Name of "Frisby Productions"

**July 2020 EIDL Application**

v.    It was further part of the conspiracy that on or about July 15, 2020, members of the conspiracy would and did submit and cause the submission of a false EIDL loan application to theSBA, on behalf of the fraudulent business entity "Frisby Productions."

w.    It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Frisby Productions" had seven employees and a gross profit of $40,000 in 2019.

x.    It was further part of the conspiracy that members of the conspiracy would and did submit and cause to be submitted false and fraudulent supporting documentation to SBA.

y.    It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and

did cause the SBA to approve the EIDL application and to issue

approximately $11,300 in EIDL funds on or about August 11, 2020.

Fraudulent CARES Act Loans in the Name of "Roy Swift"

**July 2020 EIDL Application**

z.      It was part of the conspiracy that on or about July 8, 2020,

members of the conspiracy would and did submit and cause the submission

of a false EIDL application to the SBA on behalf of the fraudulent business

entity "Roy Swift."

aa.     It was further part of the conspiracy that members of the

conspiracy would and did falsely and fraudulently certify that the business

entity "Roy Swift" involved a "self-employed individual" with an annual

gross income of $52,000 in 2019.

bb.     It was further part of the conspiracy that the materially false,

fraudulent, and misleading representations and documentation would and

did cause the SBA to approve the EIDL application and to issue

approximately $1,000 in EIDL funds.

**March 2021 PPP Application**

cc.     It was further part of the conspiracy that on or about March

17, 2021, members of the conspiracy would and did submit and cause the

submission of a false PPP loan application to Lender 3, on behalf of the

14

fraudulent business entity "Roy Swift."

    dd.     It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Roy Swift" was a sole proprietorship with an annual gross income of $90,000.

    ee.     It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the PPP funds acquired from the requested loan would be used to cover payroll costs (including proprietor expenses, equal to business expenses plus owner compensation).

    ff.     It was further part of the conspiracy that the members of the conspiracy would and did submit and cause to be submitted a false and fraudulent IRS Schedule C to Lender 3 as supporting documentation.

    gg.     It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA and Lender 3 to approve the PPP application and Lender 3 to issue approximately $18,750 in PPP funds on or about March 31, 2021, to members of the conspiracy.

**April 2021 PPP Application**

    hh.     It was further part of the conspiracy that on or about April 9,

2021, members of the conspiracy would and did submit and cause the submission of a false PPP loan application to Lender 3 on behalf of the fraudulent business entity "Roy Swift."

ii.     It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that the business entity "Roy Swift" was a sole proprietorship with an annual gross income of $90,000.

jj.     It was further part of the conspiracy that members of the conspiracy would and did falsely and fraudulently certify that PPP funds acquired from the requested loan would be used to cover payroll costs (including proprietor expenses, equal to business expenses plus owner compensation).

kk.     It was further part of the conspiracy that members of the conspiracy would and did submit and cause to be submitted a false and fraudulent IRS Schedule C to Lender 3 as supporting documentation.

ll.     It was further part of the conspiracy that the materially false, fraudulent, and misleading representations and documentation would and did cause the SBA and Lender 3 to approve the PPP application and Lender 3 to issue approximately $18,750 in PPP funds on or about April 22, 2021, to members of the conspiracy.

mm.     In total, members of the conspiracy submitted nine fraudulent loan applications to the SBA seeking a total amount of at least $241,132. The SBA and/or its partner banks approved seven of the fraudulent PPP and EIDL applications submitted by members of the conspiracy. The additional two loan applications were ultimately denied. These financial institutions suffered losses of at least $162,132 on the loans.

nn.     It was further part of the conspiracy that members of the conspiracy would and did use and cause the CARES Act funds that they obtained to be used for unauthorized purposes and for their own personal enrichment.

oo.     It was further part of the conspiracy that members of the conspiracy would and did submit PPP Loan Forgiveness Applications, falsely certifying that PPP loan proceeds had been spent on qualifying expenses including payroll and requesting that the SBA and/or its partner banks forgive the entirety of the loans.

pp.     It was further part of the conspiracy that members of the conspiracy would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO AND THREE
## (Wire Fraud)

### A. Background

1.        Paragraphs 1 through 20 of Count One of this Indictment are hereby realleged and incorporated herein by reference.

### B. The Scheme and Artifice

2.        Beginning in or about July 2020, and continuing through on or about September 25, 2021, in the Middle District of Florida, and elsewhere the defendant,

ROY SWIFT,

and others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations, and promises, the substance of which scheme and artifice is described below.

### C. Manner and Means

3.        The allegations contained in Paragraph 21 of Count One of this Indictment are hereby realleged and incorporated herein by reference.

### D. Executions of the Scheme and Artifice

4.        On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

18

ROY A. SWIFT,

for the purpose of executing the aforesaid scheme and artifice to defraud and

for obtaining money and property by means of materially false and fraudulent

pretenses, representations and promises, did knowingly, and with intent to

defraud, transmit and cause to be transmitted by means of wire

communication in interstate and foreign commerce, the following writings,

signs, signals, pictures, and sounds:

| Count | On or About Date | Interstate Wire |
|-------|-----------------|-----------------|
| TWO | March 17, 2021 | Submission of the PPP loan application from the Middle District of Florida to the Lender, processed using a server located outside of Florida |
| THREE | April 9, 2021 | Submission of the PPP loan application from the Middle District of Florida to the Lender, processed using a server located outside of Florida |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT FOUR
### (False Claim to a Federal Agency)

On or about March 17, 2021, in the Middle District of Florida, and

elsewhere, the defendant,

ROY A. SWIFT,

did knowingly make and present to a department and agency of the United

States, a claim upon and against the United States, and any department and

19

agency thereof, that is, a Paycheck Protection Program loan application, knowing such claim to be false, fictitious, and fraudulent.

In violation of 18 U.S.C. § 287.

## COUNT FIVE
### (False Claim to a Federal Agency)

On or about April 9, 2021, in the Middle District of Florida, and elsewhere, the defendant,

ROY A. SWIFT,

did knowingly make and present to a department and agency of the United States, a claim upon and against the United States, and any department and agency thereof, that is, a Paycheck Protection Program loan application, knowing such claim to be false, fictitious, and fraudulent.

In violation of 18 U.S.C. § 287.

## COUNT SIX
### (False Claim to a Federal Agency)

On or about August 10, 2021, in the Middle District of Florida, and elsewhere, the defendant,

ROY A. SWIFT,

did knowingly make and present to a department and agency of the United States, a claim upon and against the United States, and any department and agency thereof, that is, a Paycheck Protection Program loan forgiveness

application for Loan No. 5030368607, knowing such claim to be false, fictitious, and fraudulent.

In violation of 18 U.S.C. § 287.

### COUNT SEVEN
### (False Claim to a Federal Agency)

On or about August 10, 2021, in the Middle District of Florida, and elsewhere, the defendant,

ROY A. SWIFT,

did knowingly make and present to a department and agency of the United States, a claim upon and against the United States, and any department and agency thereof, that is, a Paycheck Protection Program loan forgiveness application for Loan No. 3728838805, knowing such claim to be false, fictitious, and fraudulent.

In violation of 18 U.S.C. § 287.

### FORFEITURE

1.    The allegations contained in Counts One through Three are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. §§ 1343 and/or 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.    The property to be forfeited includes, but is not limited to, the following: an order of forfeiture in the amount of $162,132, which represents the amount of proceeds the defendant obtained from the offenses.

4.    If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,



GREGORY W. KEHOE
United States Attorney

By:

Rachel S. Lyons
Special Assistant United States Attorney

By:

Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

23

FORM OBD-34

March 26                                    No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Orlando Division

### THE UNITED STATES OF AMERICA

vs.

### ROY A. SWIFT

### INDICTMENT

Violations:   18 U.S.C. § 1349
              18 U.S.C. § 1343
              18 U.S.C. § 287

A

Filed in open court this 11ᵗʰ day

of March 2026.

_____
                    Clerk

Bail $_____

GPO 863 525